ALTON S. MACDONALD & others[1] *vs.* JOHN CARR & others.[2]

Suffolk.   October 9, 1968. — January 3, 1969.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Labor.   Jurisdiction,* Objection to jurisdiction, Federal field, Labor.   *Constitutional Law,* Labor.   *Equity Pleading and Practice,* Class suit.

On appeal by the plaintiffs in a suit in equity, it was the duty of this court to decide the question of the trial court's jurisdiction to entertain the suit where a plea to the jurisdiction by the defendants was overruled but, having prevailed on the merits, they did not appeal. [122]

Where it appeared in a suit in equity that the original bill sought to enjoin an election of officers in a local of an international labor union on the alleged ground of ineligibility of defendants as candidates, that following denial of a preliminary injunction the election was held and such defendants were elected, that thereafter the bill was amended so as to seek a declaratory decree of ineligibility of such defendants and an injunction against their performing the duties of their offices, that one of the plaintiffs sued as an individual and as a member of the local, that the other plaintiffs sued as representing the membership of the international union, and that the first plaintiff was also a member of the international union and so one of the persons purportedly repre-

---

[1] Five named individuals, each an officer of the International Brotherhood of Telephone Workers (IBTW).

[2] Four named individuals, each an officer and member of Local #2 and six other named individuals who were nominated and elected as officers or convention delegates by Local #2.

sented by the other plaintiffs, this court held that in the circumstances the trial court lost jurisdiction of the suit by reason of 29 U. S. C. (1964) §§ 482, 483. [122–123]

BILL IN EQUITY filed in the Superior Court on January 19, 1967, and afterward amended.

The suit was heard by *Smith*, J.

*Joseph T. Doyle* for the plaintiffs.

*Warren H. Pyle* for the defendants.

KIRK, J. This bill in equity as originally filed on January 19, 1967, sought to enjoin the defendants and all other members of Local #2 of the IBTW from conducting or participating in an election of officers and convention delegates of Local #2 for the year 1967. The plaintiffs are MacDonald, individually, who is a member of Local #2 of the IBTW and several other named persons who sue on their own behalf as officers and as members of the IBTW and as representatives of other members of the IBTW. The alleged grounds for seeking the preliminary injunction were, in summary, that Local #2 was chartered by and is affiliated with the IBTW, that certain individual defendants had for cause, after hearing, been indefinitely suspended from membership in the IBTW and, consequently, under the by-laws of Local #2 and the constitution of the IBTW, were ineligible for nomination to the several offices they sought in Local #2, and that MacDonald, a member in good standing in Local #2, had appealed to the IBTW which brought the bill to preserve and enforce MacDonald's rights.

On January 26, 1967, the application for a preliminary injunction was denied. On February 6, 1967, the defendants in their answer and in special pleas asked that the bill be dismissed on the grounds that the election had already been held on January 27, 1967, and therefore the Superior Court was without jurisdiction of the case under the provisions of the Labor-Management Reporting and Disclosure Act of 1959, as amended.

On April 5, 1967, the plaintiffs filed and the judge allowed an amendment which converted the original bill into a bill

for declaratory relief, seeking a declaration that the defendants were ineligible to hold the offices to which they had been elected and asking that they be enjoined from performing the duties of their respective offices. The defendants in their answer to the amended bill admitted, inter alia, that they had been elected and asked that the bill be dismissed. The judge to whom the case was assigned for hearing on the pleas and on the merits deferred decision on the pleas until after hearing the merits. Thereafter, he made a report of material facts, overruled the pleas, and entered a decree denying relief to the plaintiffs, and declaring that the defendants had been illegally suspended by the IBTW and were properly elected. The decree ordered that the defendants be restored to good standing by the IBTW and that the plaintiffs not interfere with the defendants in their offices. The plaintiffs appeal from the final decree. The defendants have not appealed.

The foregoing summary of the pleadings in sequence makes it unnecessary, as will subsequently appear, for us to deal with the merits of the controversy or to pass upon (with no intimation of error) the propriety of the comprehensive findings made by the judge. Our view of the case is controlled by the critical fact, established by the amended bill and the defendants' answer, that an election had been held on January 27, 1967. This fact presents the issue of lack of jurisdiction in the Superior Court to deal with the subject matter. It is our duty to resolve the issue of jurisdiction even though the defendants, having prevailed on the merits, have not appealed. *Commissioner of Corps. & Taxn.* v. *Chilton Club*, 318 Mass. 285, 287. Both parties have to some extent argued the issue of jurisdiction to us.

It is our conclusion that, no injunction having been granted, leaving the defendants free to hold an election, the Superior Court ceased to have jurisdiction once it appeared that an election had been held. In our judgment, this result follows from the provisions of Title IV, Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), §§ 402 and 403, 73 St. 519, 534, 29 U. S. C.

§§ 482, 483 (1964), which are set out in the footnote.[3] "By force of the Supremacy Clause (art. VI, second paragraph) of the Federal Constitution any State law or action which conflicts with the Federal enactments is invalid." *John Hancock Mut. Life Ins. Co.* v. *Commissioner of Ins.* 349 Mass. 390, 398, and cases cited.

Title IV of the LMRDA covers the conduct of union elections. Section 402 defines the procedure which is to be followed by a member of a labor organization who challenges an election. Section 403 concludes with the sentence, "The remedy provided by this title for challenging an election already held shall be exclusive."

It would seem clear from the terms of Title IV that its aim was to prescribe a procedure which would channel all matters which might tend to undo labor union election results into the one agency of government which in the judgment of Congress was best equipped initially to settle

---

[3] "Sec. 402. (a) A member of a labor organization —

(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body . . .

may file a complaint with the Secretary . . . [of Labor] alleging the violation of any provision of section 401 (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). . . .

(b) The Secretary shall investigate such complaint and, if he finds probable cause to believe that a violation of this title has occurred and has not been remedied, he shall . . . bring a civil action against the labor organization as an entity in the district court of the United States . . . to set aside the invalid election, if any, and to direct the conduct of an election . . . under the supervision of the Secretary . . . .

(c) If, upon a preponderance of the evidence after a trial upon the merits, the court finds — . . .

(2) that the violation of section 401 may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. . . .

Sec. 403. No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this title. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this title. The remedy provided by this title for challenging an election already conducted shall be exclusive."

them. Extrinsic evidence of the purpose of the legislation is found in a statement by one of its chief sponsors, Senator John F. Kennedy, who said, "In the case of elections we preempt action for the Federal Government after the election is held. A suit may be filed in a State court prior to an election. The Federal Government takes preemption after an election. We have attempted to exercise Federal rights in those areas where the Federal Government can best do the job, and have attempted to provide for State preemption in the areas where the State can do it best. . . . Prior to the day of an election an individual can sue in a State. The day after an election the Secretary of Labor assumes jurisdiction." 105 Cong.. Rec. 6485 (1959). This view of the purpose of the legislation is confirmed by the fact that all attempts to preserve in the act remedies which theretofore were available under State law after the holding of elections were defeated. See Sen. Rep. No. 187, 86th Cong., 1st Sess., U. S. Code Cong. & Adm. News 1959, p. 101.

Finally, and we think with conclusive effect, we quote the observation made by the Supreme Court of the United States in the context of a case where the question was whether a union member could bring a suit in the Federal District Court under Title I of LMRDA as an alternative to a challenge under Title IV, § 402: "Reliance on the discretion of the Secretary [of Labor] is in harmony with the general congressional policy to allow unions great latitude in resolving their own internal controversies, and, where that fails, to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort to the courts. . . . [I]t is sufficient to say that we are satisfied that the Act itself shows clearly by its structure and language that the disputes here, basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set out in that Title." *Calhoon* v. *Harvey*, 379 U. S. 134, 140–141.

The parties to the present bill and the subject matter of the litigation bring the case fully within the framework of Title IV of LMRDA. The plaintiff MacDonald who sues individually and as a member of Local #2 and who claims to be aggrieved by the election of allegedly noneligible members of Local #2 is clearly a person whose exclusive remedy is under § 402. Notwithstanding the framing of the bill as one to determine the eligibility of the individual defendants to hold office, the essence of the relief sought in the amended bill is to undo the election held by Local #2 on January 27, 1967. The eligibility of members to stand for election has been recognized as a basis for action by the Secretary of Labor under § 402. See *Wirtz* v. *Local 125, Laborers' Intl. Union,* 389 U. S. 477, 478. Nothing in the bill points to any conduct by the defendants subsequent to their election which would warrant our viewing it solely as a removal proceeding for misconduct in office after election.

Although we are aware of no decision since the enactment of LMRDA which has dealt with the precise situation before us (where the plaintiffs sought and were denied relief prior to a union election in a State court and then sought to challenge the election in the same court after the election had been held) the result should not be different. The amended pleadings unlike the original bill posed the fait accompli of a court-permitted election within the union and this per se removed MacDonald's case beyond the jurisdiction of the Superior Court. We, therefore, are not dealing with a situation where a court whose jurisdiction is first invoked may thereafter retain it despite concurrent jurisdiction in another court. See *Commonwealth* v. *Domanski,* 332 Mass. 66, 72.

The plaintiffs other than MacDonald (hereinafter referred to as "the plaintiffs") contend that their case stands on a different footing. They argue that they sue, "not as *members* of a labor organization, but as *representatives* of a labor organization through whom the organization itself is before the Court," and that the use of their names as individuals

in the pending suit is to comply with the "peculiarity of Massachusetts pleading" which requires an unincorporated association to sue or be sued as named individuals who are fairly representative of all of its members. They urge that the pleading requirement should not obscure the fact that it is the IBTW which, unaffected by the preëmption provision of § 403, is before the court invoking State law to enforce the provisions of its constitution and bylaws against the defendants.

A few observations on this line of argument should be made. Looming larger than the contention that it is the IBTW which is before the court is the fact of the identity of the subject matter of the litigation brought in the same bill by MacDonald as an individual and by the plaintiffs in their representative capacity. The basic allegations are the same; the relief sought is the same. Further, it is clearly demonstrable from the averments of the bill that MacDonald is a member of the IBTW as well as Local #2, and thus is one of the class represented by the plaintiffs.[4] And finally it is perhaps unnecessary to state that having selected the forum to declare their rights they must accept the law of the forum as it is.

In the leading case of *Spear* v. *H. V. Greene Co.* 246 Mass. 259, 266, this court said, "The persons suing as representatives of a class must show by the allegations of their bill that all the persons whom they profess to represent have a common interest in the subject matter of the suit and a right and interest to ask for the same relief against the defendants." Applying this rule we think it is clear by the allegations of the bill that MacDonald, one of the persons whom the plaintiffs profess to represent, has no right to the same relief sought by the bill against the defendants, because of the provisions of Title IV of LMRDA,

[4] The bill alleges that under the Constitution of the IBTW MacDonald appealed to the IBTW the action of Local #2 in nominating the defendants and it shows that in order to appeal to the IBTW the appellant must be a member of the IBTW. Indeed, the record shows indisputably that MacDonald was not only a member of the IBTW but was a member of its executive committee.

§§ 402, 403. In the circumstances of the case, it follows that none of the plaintiffs has a right to that relief.

There is no unfairness in this result. Indeed the "peculiarity of Massachusetts pleading" has elicited the facts which justify the result. It is in harmony with the national purpose as declared by the Congress to have contests of union elections, once held, to be resolved by recourse to the procedures established in Title IV. To hold otherwise on this record would thwart the national purpose by opening the door to easy evasion of those procedures. We need not speculate on the reasons which caused MacDonald to decide not to file a complaint with the Secretary of Labor.

The final decree is reversed. A decree is to be entered dismissing the bill with costs to the defendants.

*So ordered.*