**Wade S. McGUIRE, Plaintiff-Appellant,**

**v.**

**GRAND INTERNATIONAL DIVISION OF the BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al., Defendants-Appellees.**

**No. 19857.**

United States Court of Appeals,
Sixth Circuit.

May 7, 1970.

Wade S. McGuire in pro. per.

Harold A. Ross, Cleveland, Ohio, for defendants-appellees; Ross, Kraushaar & Bennett, Cleveland, Ohio, on brief.

Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge and O'SULLIVAN, Senior Circuit Judge.

PHILLIPS, Chief Judge.

Appellant McGuire appeals from an order of the District Court dismissing his complaint. The suit was filed under Titles I and IV of the Labor Management Reporting and Disclosure Act (the Act), 29 U.S.C.A. § 411 et seq.

McGuire is a member of Division 92 of the Brotherhood of Locomotive Engineers (BLE). He challenges the election of Charles S. Coughlin as First Assistant Grand Chief Engineer. This election was held at the 1966 convention of the BLE. The District Court granted the motion of defendants to dismiss. We affirm.

This dispute arises out of the following facts: For purpose of representation at conventions of the BLE, a division of less than 200 members is grouped with not more than two other divisions. These grouped divisions choose one delegate from among the membership of the three divisions. At every third convention each division is entitled to have one of its members be a convention delegate, if that division has not been so represented at either of the two preceding conventions.

For the 1966 convention, which was held from June 27 to August 3, 1966, one S. R. Price, who was not a member of division 92, was selected to be the convention delegate representing the three divisions. About a month before the convention date, McGuire's division sent a letter to Price which contained a series of eleven instructions. There appears to have been some question as to whether certain of the instructions were contradictory, but that matter is not involved on this appeal. It is undisputed that one of the instructions was that Price was to place McGuire's name in nomination as a candidate for the position of First Assistant Grand Chief Engineer. This was to be done, according to the instructions, "at the appropriate time at said convention in the name of Division 92."

During the election of Grand Chief Engineer, which was held first, Price informed Coughlin, who was the presiding officer, of the communication from Division 92. Price, at Coughlin's request, then surrendered the letter to Coughlin, and requested "to be recorded as complying with these instructions." Following completion of the election for Grand Chief, Coughlin relinquished the chair, and the newly elected Grand Chief, presided. Thereafter the house was opened for the nominations for First Assistant Grand Chief Engineer. Coughlin was nominated. The chairman called for any further nominations. None were forthcoming. Price remained silent throughout.[1] Thereafter a motion was made to close the nominations. This motion carried and Coughlin was elected without McGuire's name having ever been placed in nomination.

On August 7, 1966, McGuire appealed to the union's Board of Appeals concerning the election. When the Board of Appeals failed to reach a final decision within three months after submission of the matter, McGuire filed a complaint

---

1. It is probable that Price's action here constituted a "violation of obligation" under § 18 of the BLE's Constitution which was in effect at the time of the 1966 convention. This section provided that:

"(a) Whenever a poll of a Division is ordered to instruct a delegate to the G.I.D., the Secretary-Treasurer will send out a ballot to each member (with all questions printed thereon) requesting him to vote on said questions, and when properly filled out it must be returned to the Secretary-Treasurer before the date indicated on the ballot.

"(b) If a majority of the members vote in favor of the questions submitted, the Division shall so instruct the Delegate and he shall carry out his instructions. Such instructions shall be signed by the Chief Engineer and the Secretary-Treasurer, and seal attached, and said instructions shall be brought in person to the Convention by the Delegate so instructed, and *in case he fails to carry out such instructions he shall be guilty of violation of obligation,*" (Emphasis supplied.)

with the Secretary of Labor.[2] Following an investigation the secretary refused to initiate an action to set aside the election or to grant any other relief to McGuire with respect to the 1966 election. However certain modification of § 18 of BLE's Constitution was agreed upon between the Secretary and the BLE to take effect at future elections of the Grand International Division of the union.[3] The case was closed by the Secretary on March 31, 1967.

Thereafter McGuire continued his protest to the Secretary and in addition complained to various members of Congress, all to no avail.

On March 17, 1969, McGuire, representing himself, filed the present action in the District Court.

In his complaint he alleged that the election of Coughlin violated §§ 101(a)(1), (2) and 401(e) of the Act, 29 U.S.C.A. §§ 411(a) (1), (2) and 481(e), respectively. Further it is alleged that Coughlin's election was invalid, and that minutes of the convention showed at least two divisions on record as having instructed their delegate to vote for Mc-

---

2. Section 402 of the Act, 29 U.S.C.A. § 482(a) provides:

"(a) A member of a labor organization—
(1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
(2) who has invoked such available remedies *without obtaining a final decision within three calendar months after their invocation,*

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers). The challenged election shall be presumed valid pending a final decision thereon (as hereinafter provided) and in the interim the affairs of the organization shall be conducted by the officers elected or in such other manner as its constitution and bylaws may provide." (Emphasis supplied.)

3. These modifications are not at issue in this proceeding although McGuire claims that the union and the Secretary made a "deal" unlawfully to rewrite a portion of the union's Constitution and bylaws. The modification added a subsection (c) to § 18, as set out in note 1 *supra.* Subsection (c) provides:

"In the event a Delegate shall be instructed in accordance with subsections (a) and (b) of this section by a Division to make nomination or nominations for any office of the GID, the Chief Engineer and Secretary-Treasurer of said Division shall also file a copy of the instructions pertaining to nominations with the General Secretary-Treasurer of the GID by sending same by certified mail, return receipt requested, at least ten (10) days prior to the date of the convening of the convention.

"It shall be the duty of the instructed Delegate to place in nomination at the convention of the GID the name or names of the candidate(s) for the office(s) designated in his instructions; however, in the event the instructed Delegate fails to do so, the General Secretary-Treasurer shall bring the matter to the attention of the presiding officer who shall call on said Delegate to place the name or names in nomination. If said Delegate is not present at that time or refuses to make any nomination as to which he has been instructed, the General Secretary-Treasurer, or in the event his office is involved in the election, the presiding officer shall formally nominate said candidate for the office in question.

"If any instructed Delegate refuses to comply with nominating instructions, the Grand Chief Engineer shall, as soon as practicable after the convention is concluded, serve said Delegate with written specific charges. After the individual has been given a reasonable time to prepare a defense and has been afforded a full and fair hearing, the Grand Chief Engineer shall have the authority, upon finding said Delegate has wilfully or deliberately violated his obligation, to remove him from office as a Delegate and/or to reprimand, expel or suspend his membership in the Brotherhood of Locomotive Engineers. If said Delegate is found guilty and ordered removed from office, the General Secretary-Treasurer shall immediately notify the alternate Delegate and the Division(s) represented by said Delegate of the action taken and to further instruct the alternate Delegate to assume representation of said Division(s) until the next regular election of Delegates."

Guire. It is prayed that the Court declare McGuire the validly elected First Assistant Grand Chief.

District Judge William K. Thomas held that where a member of a union who was an unsuccessful candidate for union office seeks post-election relief, under either Title I or Title IV of the Act, the exclusive remedy is through the Secretary of Labor under Title IV. Alternatively the Court held that McGuire, in seeking relief before the Secretary, had elected his remedies for challenging an election already held.

The issue here is whether a member of the union who was an unsuccessful candidate for an office in the international union may seek relief in the District Court with respect to an election already held.

The relevant portion of Title I provides:

"(a) (1) Equal rights.—Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

(2) Freedom of speech and assembly.—Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C.A. § 411(a) (1), (2).

Title IV, which deals specifically and in some detail with elections, provides in pertinent part that:

"No labor organization shall be required by law to conduct elections of officers with greater frequency or in a different form or manner than is required by its own constitution or bylaws, except as otherwise provided by this subchapter. Existing rights and remedies to enforce the constitution and bylaws of a labor organization with respect to elections prior to the conduct thereof shall not be affected by the provisions of this subchapter. *The remedy provided by this subchapter for challenging an election already conducted shall be exclusive.*" 29 U.S.C.A. § 483 (Emphasis supplied.)

The Supreme Court said in Calhoon v. Harvey, 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190:

"Title IV sets up a statutory scheme governing the election of union officers, fixing the terms during which they hold office, requiring that elections be by secret ballot, regulating the handling of campaign literature, requiring a reasonable opportunity for the nomination of candidates, authorizing unions to fix 'reasonable qualifications uniformly imposed' for candidates, and attempting to guarantee fair union elections in which all the members are allowed to participate."

From the detail with which Title IV sets out the rights, remedies and procedures, and in the light of the Supreme Court's construction of the Act, this Court is convinced that with respect to his complaint as to the election McGuire must proceed under Title IV and not Title I. His complaint, although claiming violation of Title I rights, in substance alleges a nomination procedure which violated the rights protected under Title IV. He charges irregularities which prevented

his name from coming before the convention, an allegation charging an invalid nominating procedure. He also alleges that Coughlin's election was invalid, and that he, McGuire, received the only votes validly cast for First Assistant and therefore should be declared the winner of the election. These allegations go to the heart of the rights protected by Title IV.

Appellant urges that there may be some overlap between Title I and Title IV protections, but that such overlap is not fatal to the maintenance of suit under Title I by the individual union member. That argument cannot stand under the facts of the present case. Insofar as McGuire alleges election violations specifically dealt with in Title IV, we hold that the procedures of Title IV must be invoked, notwithstanding a possible concurrent offense under Title I.

This is the only construction of the Act which comports with the Congressional purpose to treat election matters differently, entrusting to the Secretary the vindication of protected rights. The legislative history of the Act shows that the House version of the bill would have permitted suits by individual members after they exhausted their remedies within the union's channels. The Senate version permitted only the Secretary to initiate suit in this situation. The bill went to conference and the Senate version was retained in lieu of the one passed in the House. U.S.Code Cong. and Ad.News, 1959, page 2507.

If an individual member could bring suit by the simple expedient of framing a claim under Title I, where the substance of the claim falls under Title IV, the comprehensive administrative and procedural provisions of Title IV would be rendered meaningless. We hold the substance of the claim is controlling.

McGuire has not alleged discrimination which would give rise to an independent claim under Title I. See Depew v. Edmiston, 386 F.2d 710 (3rd Cir.); Mamula v. United Steelworkers of America, 304 F.2d 108 (3rd Cir.), cert. denied, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63. There is no allegation of unequal treatment of the nominators, as was the case in O'Brien v. Paddock, 246 F.Supp. 809 (D.C.N.Y.), upon which McGuire relies.

We think the gravamen of this complaint plainly falls within Title IV.[4] Where post-election relief is sought under Title IV the exclusive remedy is provided by that title. Only the Secretary may bring suit. 29 U.S.C.A. §§ 482(b) and 483. Calhoon v. Harvey, *supra*, 379 U.S. 134, 85 S.Ct. 292, 13 L.Ed.2d 190; Stein v. Wirtz, 366 F.2d 188, 10 Cir.

We recognize that on a motion to dismiss the complaint must be viewed liberally and its averments of fact accepted as true. This Court has given a most liberal consideration to the complaint in the present case, in which McGuire, a layman, is representing himself without the assistance of a lawyer. McGuire made made an earnest and effective oral argument in this Court on his own behalf. Notwithstanding our sympathetic view of the case,[5] we have no choice except to affirm the District Court.

Affirmed.

---

4. McGuire does claim that the procedures complained of violated the union's constitution and by-laws which deal with elections and nominating procedures. This also would be a Title IV matter.

5. It is obvious from the record that McGuire was deprived of any chance to have his name put before the convention as a candidate. The impact of this situation is somewhat lessened when we note that there is some indication that if nominated McGuire had little, if any chance of having been successful. Hence the irregularity may not have "affected the outcome of the election." Even where the Secretary chooses to bring suit, it must be shown to the Court by a preponderance of the evidence that any irregularities complained of "may have affected the outcome of an election." 29 U.S.C.A. § 482(c) (2).